Case No. 22-5267 Architects & Engineers for 9-11 Truth et al. Barbara Kurkowski-Ristelli & William Pervitale, AIA v. Gina Raimondo, in her official capacity as Secretary of Commerce et al. Mr. Harrison, for the imbalance. Ms. Potty, for the appellees. Good morning, Your Honors. Good morning. I'm pleased to report Mick Harrison for all the appellants. The appellants include one non-profit organization, several family members of victims of the 9-11 tragedy, and several architects and engineers individually. Plaintiffs brought several claims under the Administrative Procedures Act for arbitrating capricious agency action by the defendant agency, National Institute of Standards and Technology. The underlying controversy relates to a study of the collapse of World Trade Center Building 7 on 9-11, the day of the terrorist attacks. The District Court dismissed all the plaintiffs' claims for lack of standing, informational and organizational standing, and in doing so, the District Court misconstrued this Court's precedent on both informational and organizational standing. The Court, in particular, the District Court, failed to adopt, as this Court requires in its precedent, the plaintiff's view, the statute that requires disclosure of information that the plaintiff did not receive. And that controversy, in terms of what the plaintiff's view is, we're talking about the National Construction Safety Team Act, we're talking about the requirement on NIST, the agency, to produce a report to the public that identifies the likely cause of the building's collapse. The statute was designed to require studies of collapses of buildings where there's been a major loss of life or where there might be the potential for a major loss of life, as was the case with the Trade Center Building collapses on 9-11. So the plaintiff's view is pretty straightforward. The statute requires a report, not just a report. The District Court seemed to focus on just the requirement for any kind of report. But the statute says a report that identifies and analyzes the likely technical cause of the collapse. So the information the plaintiffs were entitled to here, that underlies their informational standing, not just a report or any kind of report, it's a report that gives an honest, good faith, meaningful identification and analysis of the likely cause of the building's collapse. And the complaint, which as in the prior case, the allegations in the complaint need to be taken as true for the purpose of a motion to dismiss, which we have here, establishes that the agency's report was not done in good faith. It was essentially a sham report. It did not identify the likely cause of the building's seventh collapse. That's where the District Court failed to honor your honor's precedent, this court's precedent, which requires the plaintiff's view of the statute to be taken as controlling for deciding the standing question. I know we have to, as a general rule, take the allegations in the complaint as true, but what are the limits of that when it comes to your allegations about how to interpret a statute? I don't know that there is a limitation. What if we interpreted a random statute to give you access to the president's schedule every day ahead of time? Sorry, not if we, what if a complaint interpreted a statute to do that? Is the court supposed to just take that as true? No, that would be an extreme example, and I think most everybody would have trouble accepting that as a legitimate requirement for security reasons, but I believe that that type of problem gets addressed at a later stage in the case where there's an evidentiary hearing. So you think we couldn't even reject that theory? We couldn't even reject that theory at a motion to dismiss stage? It's a good question. I think if the plaintiff's theory is plausible, that may be the standard we're looking for here, then it has to be accepted for deciding the standing question on a motion to dismiss. Here, we certainly think it's plausible for a citizen in this country to expect a federal agency mandated to issue a report involving the collapse of a building and a major tragedy to do so in good faith, not issue a sham report but one that actually addresses the congressional intent, which is identifying the cause of the collapse. Congress is trying to achieve a public interest goal here. They're trying to get the agencies to help prevent future tragedies by identifying the correct cause of the building collapse. If that doesn't happen, those types of tragedies may reoccur, and the public interest goal is not achieved. Did any of the plaintiffs make a request under 7306 for the release of information underlying the report? Good question, Your Honor. I believe one or two of the engineers did. Mr. Brookman may be an example. He gave a declaration. In his individual capacity, and he was granted some and denied others. I think that's correct, Your Honor. And he never sought judicial review of the denial, right? Not other than through this case. Not what? Not other than through this particular action. Well, he can't do it because of the statute of limitations, Your Honor. Well, I might respectfully disagree with you, Your Honor. We did assert a fraudulent concealment argument on the statute of limitations question. Brookman submitted a request in 2014, was denied in 2015. The statute of limitations for review of FOIA cases is six years. That's correct, Your Honor. So the statute is run. Well, if there was fraudulent concealment, I mean, Your Honor may be correct on that particular point. I just want to preserve my position on fraudulent concealment. So the 7306, which requires the release of information, this is the thing that I was focusing on here. Yes, sir. But it requires a request. I think that's true. Our claims are mainly 7307. The magistrate court said, well, you have to go through FOIA in order to do that. The district court did say that. I'm not sure that's correct. I don't believe it is correct, Your Honor. But you at least have to make a request. We would not entertain a case from a litigant who came in and said, listen, the Department of Justice has such and such information and they haven't released it. Understood. We wouldn't entertain that because if the individual never requested the Department of Justice to release it. And that's the situation that seems to me is where you are in that. Well, I don't think that's correct because the heart of the complaint is not about 7306, it's about 7307. And the requirement to issue a report identifying the likely cause, that requirement doesn't require a request. 7307 does not require a request. 7306 does. 7307 is a report, right? It is a report requirement to be issued to the public. And you can challenge the report by asking for a correction. And you did that. We did. And you lost. That's why we're here, Your Honor. Yeah. And we lost because of an arbitrary decision that. I find it odd that you're challenging the rejection. You don't even put the rejection letter in the appendix. The appeal denial letter, you may be correct, you may not be there. But that is, we are challenging denial of a request for correction and denial of the appeal on that denial of a request for correction. That is what this APA claim, federal claims is about. And, Your Honor, I wanted to make one big picture point. I'm using my rebuttal time, I see. And that is that in applying a standard that is overly restricted on citizen access to the courts, standard standing to sue, there's an inevitable consequence of that narrowing of the standing doctrine. And that is that Your Honor's authority to judicial oversight of the executive branch and to correct agency misconduct is likewise narrow. And as Your Honors know, unlike Congress, you can initiate congressional oversight on their own initiative. Your Honors can't do that. I have one last question. What do you think was the harm that Congress was trying to prevent with the statute? And how was that suffered here? The National Construction Safety Team Act statute, I assume is the one we're referring to, was intended to prevent future building collapses that cause major loss of life by having the federal agency identify the causes of the prior collapses, inform the public and the scientific community. I think there were two audiences targeted by Congress, Your Honor. That harm just sounds quite different than the harm you think happened. Well, we've got the harm that we articulate and that we assert is that for the group of architects and engineers, whose profession is to construct buildings that don't collapse and kill people, protect the safety of their clients, that this statute was intended to serve that audience, by helping provide correct analyses of why buildings collapse in major tragedies. It was also intended to serve a second audience, and that was the victims of the building collapses, to help them understand why their loved ones lost their lives. And so that's why we think both groups of our plaintiffs and appellants have standing here, that we're within the scope. Very good. Thank you. I'll give you one minute, and I'm about over. Appreciate it. Ms. Pottinger. Good morning, Your Honors. May it please the Court. Katherine Pottinger for the United States. A plaintiff has not suffered an informational injury unless it has been deprived of information that a statute requires the defendant to disclose. Plaintiffs here point to two statutes, the Information Quality Act and the National Construction Safety Act. Neither will survive. Starting with the Information Quality Act, this Court has already recognized that the statute creates no legal rights for plaintiffs in any third parties, and thus cannot be the source of plaintiff's claimed entitlement. The Court has also recognized that it does not constitute a statutory mechanism by which an agency's conclusion can be touted. That's in the Mississippi Commission case, quoting Judge Ludisipin and Salt Institute. Turning to the National Construction Safety Team Act, plaintiffs have already acknowledged that NIST has submitted its report in 2008 on the analysis, including NIST's analysis of the likely technical cause of the collapse of World Trade Center 7. That is what the statute requires. That is what NIST provided. And plaintiffs have not plausibly alleged that they have been denied access to any information that they have a legal entitlement. Let me ask you two questions. The first is, maybe try moving the microphone a little closer to you. I think we're going through this week with some growing pains on our new audio system. It's not you, it's us. And then the second is, imagine that the NIST had just never published a report. Who would have had standing to challenge that? I'm not sure if there would have been standing to challenge that. There could perhaps be a plaintiff who, one, plausibly alleged that there was no report, and two, offered an articulated argument for why they have suffered the harm that Congress intended to prevent by requiring the disclosure. There are a million statutes requiring agencies to issue millions of different reports. That doesn't mean that there's always standing to challenge an agency's report or not. Here, plaintiffs have alleged that NIST issued the report. They do suggest that they offer allegations that it may be a sham, but the question is not whether plaintiffs disagree with NIST's report, whether they want a different report. It's whether NIST, the agency with the world's leading experts in structural engineering and analysis of building failures, has issued a report on the investigation as required by statute. I just want to understand the first requirement, at least for informational standing, is that a statute entitles them to the information. At least on that prong, if no report was issued at all, would you be contesting that they satisfy that step of the analysis? Not the first step, Your Honor. Do you have a concrete conception of the second prong of who suffers the type of harm Congress sought to prevent in 7307? We have not focused on that prong here, Your Honor, because there is a report that does have this analysis, and so when plaintiffs failed at the first prong, that is where the analysis stops. Plaintiffs do allege in their complaint, for example, that some of the plaintiffs are family members of those lost on 9-11, and that if NIST revised its report in the way plaintiffs desired, then that would prompt investigations resulting, they speculate, in conclusions that explosives also set off, caused the collapse of World Trade Centers 1 and 2, the Twin Towers, and that that would provide some closure. That chain of reasoning seems especially speculative, and I do not think it would satisfy the second prong, but they've not offered other theories about how that would work. I do want to point out, Your Honor, that the allegations themselves engage substantively with the analysis of the building's collapse here, undermining any suggestion that there is a lack of engagement or thorough analysis here that would be the equivalent of simply not issuing a report, which is really the question here when there are these allegations of a sham report. So, for example, in paragraph 126 of the complaint, they do identify the basic mechanism of the collapse, as NIST explained it. It is that the heat from these fires caused K-3004 to expand, and that this expansion caused Verter A-2001 to be pushed off of its support at column 79. And they quibble with that analysis. They say that beam K-3004 could have only expanded 5.7 to 8 inches, and it would have needed to expand 6.25 inches. At this point, we are so far beyond any allegation that there was no report, no thorough engagement. If there are no further questions, we ask this Court to adjourn. Thank you. Thank you. In closing, the government is asking Your Honors to open a sort of a major gap in the ability of citizens to access courts to review agency misconduct to create a substantial new limit on judicial review of agency misconduct. And if you adopt the government's proposed rule, the agency will be in control of when they get judicial review and when they don't. Because Congress imposes a mandate on the agency to do, like a report or an investigation, some major effort to protect the public, as here, regarding the biggest tragedy arguably in our history. And they decide to do a sham report, basically disrespect the congressional intent, for whatever reason, corrupt or otherwise. The rule that you're being asked to adopt is, that's okay. A sham report is okay because they did what Congress asked, which was simply to issue a piece of paper with some words on it. I don't think Congress would see that as compliant with their mandate here. So I think I would just ask Your Honors to be very thoughtful in deciding how this standing doctrine evolves. If it doesn't evolve, I think your prior decisions have been thoughtful. And make sure that we don't inadvertently preclude judicial oversight in our very important check and balances system in the Constitution. Thank you. Thank you, Mr. Harrison.
judges: Walker, Garcia, Randolph